## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY J. GROSEK, III, Trustee, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. _____ |
| | : | |
| CONNECTICUT GENERAL LIFE | : | |
| INSURANCE COMPANY and | : | |
| THE LINCOLN NATIONAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 & 1446, Defendants The Lincoln National Life Insurance Company ("Lincoln") and Connecticut General Life Insurance Company ("Connecticut General") (collectively, "Defendants"), subject to all of its defenses, which are expressly reserved herein, by and through counsel, hereby remove the above-captioned action from the Court of Common Pleas of Luzerne County to the United States District Court for the Middle District of Pennsylvania. As grounds for this removal, Defendants state as follows:

1.    On January 4, 2013, Plaintiff Anthony J. Grosek, III ("Plaintiff") filed a Complaint against the Defendants in the Court of Common Pleas of Luzerne County (Case No. 2013-00080) asserting causes of action against Defendants for breach of contract and bad faith (the "State Court Action").

2.     This Notice of Removal is filed within the time permitted by 28 U.S.C. § 1146, as Defendants were served with a copy of the Complaint in the State Court Action on January 11, 2013.  True and correct copies of "all process, pleadings, and orders served" in the State Court Action are attached to this Notice of Removal as Exhibit A.  Defendants have not taken any action and no orders have been entered in the State Court Action.

3.     Defendants are authorized to remove this action under 28 U.S.C. §§ 1441 and 1446.  This Court has original subject-matter jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Neither of the Defendants is a citizen of the forum state.  *See* 28 U.S.C. § 1441(b).  Moreover, removal is proper because this Court is the district court "for the district and division embracing the place where [the State Court Action] is pending."  *See* 28 U.S.C. § 1441(a).

4.     Complete diversity exists between the Plaintiff and Defendants.  Plaintiff is a citizen of the Commonwealth of Pennsylvania.  Lincoln is a life insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located at 1300 South Clinton Street, Ft. Wayne, Indiana 46802.  Connecticut General is a life insurance company organized and existing under the laws of the State of Connecticut, with its principal

- 2 -

place of business located at 900 Cottage Grove Road, Bloomfield, Connecticut 06152. Accordingly, complete diversity of citizenship now exists and existed at the time the State Court Action was commenced.

5.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a). The Complaint asserts claims against Defendants for breach of contract and bad faith. The Complaint alleges that Defendants' purported breach of contract caused Plaintiff damages in the amount of $62,375. In addition, Plaintiff's bad faith claim seeks punitive damages and attorney's fees, which are included for determining the amount in controversy. *See Javorksi v. Nationwide Mut. Ins. Co.*, 2006 WL 2225851, at \*5 (M.D. Pa. Aug. 2, 2006) ("If punitive damages are sought, a court may include them in the amount in controversy[.]"); *Morris v. Bankers Life & Cas. Co.*, 2012 WL 602418, at \*1-2 (E.D. Pa. Feb. 24, 2012) (in a case involving bad faith, "the claim for attorney's fees and punitive damages could easily put the amount in controversy over the jurisdictional limit"). Accordingly, the amount in controversy, exclusive of interests and costs, exceeds $75,000.

6.     In accordance with 28 U.S.C. § 1446(d), all adverse parties are being provided with this Notice of Removal, and a copy of this Notice of Removal will be filed with the Prothonotary of Luzerne County.

WHEREFORE, based on the foregoing, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and removal of this civil action to this Court from the Court of Common Pleas of Luzerne County is proper under 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

Dated:  February 8, 2013

By: /s Stephen C. Baker
Stephen C. Baker (PA 32326)
Charles J. Vinicombe*
Robert J. Mancuso (PA 309786)*
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
(215) 988-2700 (telephone)
(215) 988-2757 (fax)
stephen.baker@dbr.com
charles.vinicombe@dbr.com
robert.mancuso@dbr.com
*Admission To Be Requested

*Attorneys for Defendants The Lincoln National Life Insurance Company and Connecticut General Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of February, 2013, a true and correct

copy of the foregoing Notice of Removal was sent via email and U.S. Mail to:

> Charles A. Shaffer, Esq.
> Pugliese, Finnegan, Shaffer & Ferentino LLC
> 575 Pierce Street – Suite 500
> Kingston, PA 18704
> shaffer@pfslawyer.com
> *Counsel for Plaintiff*

> /s Robert J. Mancuso
> Robert J. Mancuso

Exhibit "A"

Pugliese, Finnegan, Shaffer & Ferentino LLC
Charles A. Shaffer, Esquire / Id No. 01825
575 Pierce Street - Suite 500
Kingston, PA 18704
570-283-1800 (Phone)
570-283-1840 (Fax)
shaffer@pfslawyer.com

FILED
PROTHONOTARY
LUZERNE COUNTY

LINCOLN 2013 JAN -4  AM 9: 11
Referred to _____

REC'D   JAN 11 2013

Answered _____

LAW DIVISION

Attorneys for Plaintiff

ANTHONY J. GROSEK, III, Trustee,
    Plaintiff

  vs.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY and
LINCOLN NATIONAL LIFE
INSURANCE COMPANY,
    Defendants

:
:
:
:
:
:
:
:
:

IN THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY

CIVIL ACTION - LAW
JURY TRIAL DEMANDED

NO.   2013-00080

## NOTICE

    YOU HAVE BEEN SUED IN COURT.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

<div align="center">

**NORTH PENN LEGAL SERVICES, INC.**
**410 Bicentennial Building**
**15 Public Square**
**Wilkes-Barre, PA 18701**
**570-825-8567**

</div>

Pugliese, Finnegan, Shaffer & Ferentino LLC
Charles A. Shaffer, Esquire / Id No. 01825
575 Pierce Street - Suite 500
Kingston, PA 18704
570-283-1800 (Phone)
570-283-1840 (Fax)
shaffer@pfslawyer.com

FILED
PROTHONOTARY
LUZERNE COUNTY

2013 JAN -4  AM 9: 11

Attorneys for Plaintiff

| | | |
|---|---|---|
| ANTHONY J. GROSEK, III, Trustee,<br>Plaintiff | : <br>:<br>: | IN THE COURT OF COMMON PLEAS<br>OF LUZERNE COUNTY |
| vs. | :<br>: | |
| CONNECTICUT GENERAL LIFE<br>INSURANCE COMPANY and<br>LINCOLN NATIONAL LIFE<br>INSURANCE COMPANY,<br>Defendants | :<br>:<br>:<br>:<br>: | CIVIL ACTION - LAW<br>JURY TRIAL DEMANDED<br>Referred to _____<br><br>NO.       REC'D   JAN 11 2013 |

**COMPLAINT**

Answered _____
LAW DIVISION

The Plaintiff, Anthony J. Grosek, III, Trustee, by and through his counsel, Pugliese,

Finnegan, Shaffer & Ferentino LLC, brings this action against Connecticut General Life Insurance

Company and Lincoln National Life Insurance Company and for his complaint, states and avers the

following:

1.     The Plaintiff is Anthony J. Grosek, III, Trustee under an Irrevocable Agreement of

Trust made March 31, 1980 by Anthony J. Grosek, Jr., Settlor, of Dallas, PA.

2.     The Defendant, Connecticut General Life Insurance Company, is a Connecticut

insurance corporation doing business in the Commonwealth of Pennsylvania with an office at 900

Cottage Grove Road, Bloomfield, CT 06002 and Two Liberty Place, TL18A, 1601 Chestnut Street,

Philadelphia, PA 19192-2362.

3.     The Defendant, Lincoln National Life Insurance Company, is an Indiana corporation

with offices at 1300 South Clinton Street, Fort Wayne, IN 46802.

4.      The Defendant, Connecticut General Life Insurance Company, on November 7, 1988, issued a life insurance policy in the face amount of $1,600,000.00 insuring the life of Anthony J. Grosek, Jr. ("Policy"). A copy of that policy is attached hereto as Exhibit "A and incorporated herein by reference thereto.

5.      The owner and beneficiary of the Policy was the Trustee under the Irrevocable Agreement of Trust made March 31, 1980 by Anthony J. Grosek, Jr., Settlor.

6.      The Defendant, Lincoln National Life Insurance Company, at all times material hereto, was the administrative agent for the Defendant, Connecticut General Life Insurance Company, and at all times material hereto was acting as such agent, duly authorized and within the scope of its authority.

7.      The Defendant, Lincoln National Life Insurance Company, on November 8, 2011, sent the Trustee a 2011 Annual Statement with regard to the Policy for the period of November 7, 2010 to November 6, 2011. A copy of that Annual Statement is attached hereto as Exhibit "B" and incorporated herein by reference thereto.

8.      The premium on the Policy due November 7, 2011 was not paid when due and the Defendant, Connecticut General Life Insurance Company began taking money from the cash value of the Policy each month to pay the premium and keep the Policy in force.

9.      The Policy, on Page 9, provided "at least thirty-one (31) days before the end of the grace period the company will send a notice that there is insufficient cash value under the policy. The notice will show the amount of the premium required to cover the monthly deduction to prevent the policy from lapsing.... If such premium as billed by the company is not paid within the grace period, all coverage under the policy will terminate without value at the end of the grace period. If

-2-

the insured dies during the grace period, the company will deduct any overdue monthly deductions from the benefits."

10.     The owner of the Policy received a letter from the Defendant, Lincoln National Life Insurance Company, dated March 6, 2012 which stated it was writing to tell the owner of the Policy that there is insufficient cash value under the Policy to cover the required monthly deduction. It stated "the minimum payment necessary to maintain this Policy in force until 11/07/2012 is $90,417.79. Unless this amount is received within the grace period, your Policy will terminate according to its terms on 04/08/2012". A copy of Lincoln National Life Insurance Company's letter dated March 6, 2012 is attached hereto as Exhibit "C" and incorporated herein by reference thereto.

11.     The letter from Lincoln National Life Insurance Company dated March 6, 2012 was the only notice sent by the Defendants that there was insufficient cash value under the Policy.

12.     The premium of $90,417.79 was paid in April 2012 before the Policy terminated.

13.     The insured died on May 20, 2012 and the owner of the Policy made a demand on the Defendants for a refund of the unearned premium which the Plaintiff estimates to be approximately in the amount of $62,375.00.

14.     The letter from Lincoln National Life Insurance Company dated March 6, 2012 did not comply with what the insurance carrier was required to do under the terms of the contract of insurance. The insurance company was required to send a notice that "will show the amount of premium required to cover the monthly deduction to prevent the Policy from lapsing." The letter of March 6, 2012 did not do that.

15.     Connecticut General Life Insurance Company was in breach of its insurance contract. It misrepresented to the owner of the Policy what had to be done in order to keep the Policy in force.

-3-

## COUNT I - BREACH OF CONTRACT

16.    Paragraphs 1 through 15 as set forth above are incorporated herein by reference as though the same were set forth herein at length.

17.    The contract of insurance required the Defendants to send a notice that would show the amount of premium required to cover the monthly deduction necessary to prevent the Policy from lapsing.

18.    The Defendant, Connecticut General Life Insurance Company, had made monthly deductions from the cash value of the Policy in order to pay the premiums each month.

19.    The Defendant, Connecticut General Life Insurance Company, did not inform the Plaintiff of the amount of premium required to cover the monthly deduction necessary to prevent the Policy from lapsing.  Instead, in violation of the terms of its agreement, the Defendant made demand for payment of a premium in the amount of $90,417.79.

20.    By demanding a payment in the amount of $90,417.79 the Defendant, Connecticut General Life Insurance Company was in breach of the insurance contract and caused the Plaintiff to pay an amount greatly in excess of the monthly deduction necessary to prevent the Policy from lapsing and resulted in the Defendant, Connecticut General Life Insurance Company, retaining an unearned premium which the Plaintiff estimates to be approximately in the amount of $62,375.00.

21.    The Defendant, Connecticut General Life Insurance Company, has breached the fiduciary duty of good faith and fair dealing imposed upon each party to a contract in its performance and its enforcement.

**WHEREFORE,** the Plaintiff, Anthony J. Grosek, III, demands:

-4-

A.  That the Defendants be directed to account to the Plaintiff for the amount of the premium required to cover the monthly deduction to prevent the policy from lapsing from April 8, 2012 through the date of the insured's death on May 20, 2012; and

B.  That judgment be entered in favor of the Plaintiff, Anthony J. Grosek, III, and against the Defendants, Connecticut General Life Insurance Company and Lincoln National Life Insurance Company, in the amount of the unearned premium determined to be due to the Plaintiff which amount is in excess of $50,000.00 which is in excess of the compulsory arbitration limits of Luzerne County together with interest and costs.

## COUNT II - BAD FAITH - 42 Pa. C.S.A. § 8371

22.  Paragraphs 1 through 21 as set forth above are incorporated herein by reference as though the same were set forth herein at length.

23.  The Defendants have breached a known duty that is the duty of good faith and fair dealing through a motive of self-interest or ill will.

24.  The conduct of the Defendants constitutes bad faith.

**WHEREFORE**, the Plaintiff, Anthony J. Grosek, III, prays this Honorable Court to:

A.  Award interest on the amount of his claim from the date the claim was made in an amount equal to the prime rate of interest plus 3%;

B.  Award punitive damages against the Defendants; and

C.  Assess court costs and attorneys' fees against the Defendants.

Respectfully submitted,
PUGLIESE, FINNEGAN, SHAFFER & FERENTINO LLC

BY: _____
CHARLES A. SHAFFER, ESQUIRE
ID. NO. 01825
570-283-1800
Counsel for Plaintiff

Date: Jan. 2, 2013

## VERIFICATION

The facts set forth in the foregoing **COMPLAINT** are true upon the undersigned's personal knowledge or upon information and belief. This written statement of fact is made by the undersigned subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities, this ___2nd___ day of ___January___ 20 _13_ .

_____, Trustee
**ANTHONY J. GROSEK, III, Trustee**

# EXHIBIT "A"

Insured   ANTHONY J GROSEK, JR            5056025   Policy Number

Initial Specified Amount   $1,600,000            NOVEMBER 7, 1988   Date of Issue

# Connecticut General Life Insurance Company

Home Office: Bloomfield, Connecticut                                          Mailing Address: Hartford, Connecticut

The Company agrees to pay the death benefit to the Beneficiary upon receipt of due proof of the Insured's death during the continuance of the policy. The Company further agrees to pay the net cash value to the Owner on the Maturity Date provided the Insured is then alive.

**Right to Examine Policy.** The policy may be returned to the insurance agent through whom it was purchased or to the Company within 10 days after its receipt (20 days after its receipt where required by law for policies issued in replacement of other insurance). If the policy is so returned, it will be deemed void from the Date of Issue, and the Company will refund the premium paid.

The policy is issued and accepted subject to the terms set forth on the following pages, which are made a part of the policy. In consideration of the application and the payment of premiums as provided, this policy is executed by Connecticut General Life Insurance Company as of its Date of Issue.

_(signature)_
Secretary

_(signature)_
Registrar

_(signature)_
President

### Flexible Premium Adjustable Life Insurance Policy - Non-Participating

Death benefit payable in the event of death before the Maturity Date. Adjustable death benefit.

Net Cash Value payable on the Maturity Date.

Flexible Premiums payable to Maturity Date or prior death of the Insured.

Premium Payment Periods and Supplementary Coverages as shown in the Policy Specifications.

LN5/05
PA

# Table of Contents

| | Page |
|---|---|
| Policy Specifications | 3 |
| Table of Surrender Charges | 5 |
| Table of Guaranteed Maximum Life Insurance Rates | 7 |
| Table of Expense Charges | 8 |
| Premium and Reinstatement Provisions | 9 |
| Ownership, Assignment and Beneficiary Provisions | 9 |
| Insurance Coverage Provisions | 10 |
| Nonforfeiture Provisions | 12 |
| Loan Provisions | 14 |
| General Provisions | 14 |
| Followed by Optional Methods of Settlement and Any Riders | |

LN505   PA

POLICY SPECIFICATIONS

|  | INSURED | ANTHONY J GROSEK, JR | 5056025 | POLICY NUMBER |
|---|---|---|---|---|
| INITIAL SPECIFIED AMOUNT | $1,600,000 | | NOVEMBER 7, 1988 | DATE OF ISSUE |
| MINIMUM SPECIFIED AMOUNT | $100,000 | | | |
| MONTHLY ANNIVERSARY DAY | 7 | | 62 | AGE AT ISSUE |
| | | | NONSMOKER | PREMIUM CLASS |
| | | NOVEMBER 7, 2021 | MATURITY DATE | |

| FORM | BENEFIT | BENEFIT AMOUNT | EFFECTIVE DATE | MONTHLY INSURANCE COST | YEARS DEDUCTIBLE |
|---|---|---|---|---|---|
| LN505 | FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE | SEE INITIAL SPECIFIED AMOUNT | DATE OF ISSUE | SEE PAGE 13 | 33 |

DEATH BENEFIT EQUALS SPECIFIED AMOUNT
(WHICH INCLUDES THE CASH VALUE)

MINIMUM INITIAL PREMIUMS:   $120,730.17 DURING FIRST POLICY YEAR OR A MINIMUM OF 1/3
                           OF THIS AMOUNT PAYABLE DURING POLICY YEARS 1, 2 AND 3.

PAYMENT MODE:   ANNUAL

NOTE:   COVERAGE WILL END PRIOR TO THE MATURITY DATE SHOWN WHERE MINIMUM INITIAL PREMIUM REQUIREMENTS
        ARE NOT MET, OR SUBSEQUENT PREMIUMS AND CREDITED INTEREST ARE INSUFFICIENT TO CONTINUE COVERAGE
        TO SUCH DATE.

        AS OF THE DATE OF ISSUE, THE INTEREST RATE ON ANY POLICY LOAN AS DESCRIBED IN THE "LOAN
        INTEREST" PROVISION ON PAGE 14 IS 8%.   THIS RATE WILL STAY IN EFFECT UNTIL THE COMPANY NOTIFIES
        THE OWNER OF A CHANGE IN SUCH RATE.

OWNER     GEORGE B SORDONI,TRUSTEE UNDER AN AGREEMENT OF TRUST WITH THE INSURED DATED MARCH 31, 1980,
          OR THE SUCCESSOR(S) IN SAID TRUST.

(CONTINUED ON PAGE 3.1)

LN505 IULMBC**1

POLICY SPECIFICATIONS

|  |  |  |
|---|---|---|
| INSURED | ANTHONY J GROSEK, JR | 5056025 POLICY NUMBER |
| INITIAL SPECIFIED AMOUNT | $1,600,000 | NOVEMBER 7, 1988 DATE OF ISSUE |
| MINIMUM SPECIFIED AMOUNT | $100,000 | 62 AGE AT ISSUE |
| MONTHLY ANNIVERSARY DAY | 7 | NONSMOKER PREMIUM CLASS |
|  |  | NOVEMBER 7, 2021 MATURITY DATE |

(CONTINUED FROM PAGE 3)

BENEFICIARY    GEORGE B SORDONI, TRUSTEE UNDER AN AGREEMENT OF TRUST WITH THE INSURED, DATED
MARCH 31, 1980, OR THE SUCCESSOR(S) IN SAID TRUST.

# TABLE OF SURRENDER CHARGES

| POLICY YEAR | SURRENDER CHARGE AS OF BEGINNING OF POLICY YEAR |
|---|---|
| 1 | $79,700 |
| 2 | 76,751 |
| 3 | 73,770 |
| 4 | 70,757 |
| 5 | 67,697 |
| 6 | 64,604 |
| 7 | 61,448 |
| 8 | 58,244 |
| 9 | 54,945 |
| 10 | 51,581 |
| 11 | 48,122 |
| 12 | 44,568 |
| 13 | 30,676 |
| 14 | 18,546 |
| 15 | 8,272 |
| 16 AND THEREAFTER | 0 |

for the Person Insured

SPECIAL NOTE: The current monthly cost of insurance rate is based on the sex, attained age (nearest birthday) and Premium Class of the person insured. In determining the monthly cost of insurance, the Company will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in the Policy Specifications. If the person insured is in a rated premium class, the Guaranteed Maximum Life Insurance Rates will be those in the table multiplied by the Risk Factor, if any, shown in the Policy Specifications. The rates below are based on the 1980 CSO Tables (Male or Female as appropriate).

| ATTAINED AGE (nearest birthday) | MALE MONTHLY RATE | FEMALE MONTHLY RATE | ATTAINED AGE (nearest birthday) | MALE MONTHLY RATE | FEMALE MONTHLY RATE | ATTAINED AGE (nearest birthday) | MALE MONTHLY RATE | FEMALE MONTHLY RATE |
|---|---|---|---|---|---|---|---|---|
| 0 | 0.34845 | 0.24089 | 35 | 0.17586 | 0.13752 | 70 | 3.30338 | 1.84490 |
| 1 | 0.08917 | 0.07251 | 36 | 0.18670 | 0.14669 | 71 | 3.62140 | 2.02325 |
| 2 | 0.08251 | 0.06750 | 37 | 0.20004 | 0.15752 | 72 | 3.98666 | 2.24419 |
| 3 | 0.08167 | 0.06584 | 38 | 0.21505 | 0.17003 | 73 | 4.40599 | 2.51548 |
| 4 | 0.07917 | 0.06417 | 39 | 0.23255 | 0.18503 | 74 | 4.87280 | 2.83552 |
| 5 | 0.07501 | 0.06334 | 40 | 0.25173 | 0.20171 | 75 | 5.37793 | 3.19685 |
| 6 | 0.07167 | 0.06084 | 41 | 0.27424 | 0.22005 | 76 | 5.91225 | 3.59370 |
| 7 | 0.06667 | 0.06000 | 42 | 0.29675 | 0.23922 | 77 | 6.46824 | 4.01942 |
| 8 | 0.06334 | 0.05834 | 43 | 0.32260 | 0.25757 | 78 | 7.04089 | 4.47410 |
| 9 | 0.06167 | 0.05720 | 44 | 0.34929 | 0.27674 | 79 | 7.64551 | 4.97042 |
| 10 | 0.06084 | 0.05667 | 45 | 0.37931 | 0.29675 | 80 | 8.30507 | 5.52967 |
| 11 | 0.06417 | 0.05750 | 46 | 0.41017 | 0.31677 | 81 | 9.03761 | 6.17118 |
| 12 | 0.07084 | 0.06000 | 47 | 0.44353 | 0.33761 | 82 | 9.86724 | 6.91414 |
| 13 | 0.08251 | 0.06250 | 48 | 0.47856 | 0.36096 | 83 | 10.80381 | 7.77075 |
| 14 | 0.09584 | 0.06667 | 49 | 0.51777 | 0.38598 | 84 | 11.82571 | 8.72632 |
| 15 | 0.11085 | 0.07084 | 50 | 0.55948 | 0.41350 | 85 | 12.91039 | 9.76952 |
| 16 | 0.12585 | 0.07501 | 51 | 0.60870 | 0.44270 | 86 | 14.03509 | 10.89151 |
| 17 | 0.13919 | 0.07917 | 52 | 0.66377 | 0.47523 | 87 | 15.18978 | 12.08770 |
| 18 | 0.14836 | 0.08167 | 53 | 0.72636 | 0.51276 | 88 | 16.39948 | 13.35774 |
| 19 | 0.15002 | 0.08501 | 54 | 0.79730 | 0.55114 | 89 | 17.57781 | 14.70820 |
| 20 | 0.15836 | 0.08751 | 55 | 0.87326 | 0.59118 | 90 | 18.82881 | 16.15259 |
| 21 | 0.15919 | 0.08917 | 56 | 0.95591 | 0.63123 | 91 | 20.14619 | 17.71416 |
| 22 | 0.15752 | 0.09084 | 57 | 1.04192 | 0.66961 | 92 | 21.57655 | 19.43814 |
| 23 | 0.15502 | 0.09251 | 58 | 1.13378 | 0.70633 | 93 | 23.20196 | 21.40786 |
| 24 | 0.15169 | 0.09501 | 59 | 1.23235 | 0.74556 | 94 | 25.28174 | 23.83051 |
| 25 | 0.14752 | 0.09668 | 60 | 1.34180 | 0.78979 | | | |
| 26 | 0.14419 | 0.09918 | 61 | 1.46381 | 0.84488 | | | |
| 27 | 0.14252 | 0.10168 | 62 | 1.60173 | 0.91417 | | | |
| 28 | 0.14169 | 0.10501 | 63 | 1.75609 | 1.00267 | | | |
| 29 | 0.14252 | 0.10835 | 64 | 1.93206 | 1.10539 | | | |
| 30 | 0.14419 | 0.11251 | 65 | 2.12283 | 1.21731 | | | |
| 31 | 0.14836 | 0.11668 | 66 | 2.32623 | 1.33511 | | | |
| 32 | 0.15252 | 0.12085 | 67 | 2.54312 | 1.45461 | | | |
| 33 | 0.15919 | 0.12502 | 68 | 2.77350 | 1.57247 | | | |
| 34 | 0.16669 | 0.13168 | 69 | 3.02328 | 1.69955 | | | |

LN505

7

## Table of Expense Charges

The following expenses are charged under this policy:

• An initial policy fee of $300.

• A monthly charge of $5 beginning on the Date of Issue.

• A charge of 5% of all premiums received.

• A fee of $25.00 for each partial surrender.

# Premium and Reinstatement Provisions

**Payment of Premiums.** All premiums are payable at the Home Office or to an authorized agent of the Company. The first premium is due on the Date of Issue, and is payable in advance. Subsequent premium payments may be made at any time before the Maturity Date. Receipts signed by the President or Secretary and duly countersigned will be furnished upon request.

Monthly Anniversary Days, policy months, policy years and policy anniversaries are computed from the Date of Issue.

**Minimum Premiums.** The Minimum Initial Premium as shown in the Policy Specifications for the Initial Specified Amount as of the Date of Issue is the amount required to prevent the policy from lapsing. Thereafter, the minimum premium is the amount required to maintain a positive surrender value as set forth under the "Grace Period" provision.

**Planned Annual Premiums.** The Company will send premium reminder notices for the amounts and frequency of payments established by the Owner. The Company reserves the right to stop sending such notices if no premium payment is made within 2 policy years. Changes in the amounts or frequency of such payments will be subject to consent of the Company.

**Unscheduled Premiums.** In addition to planned annual premiums, unscheduled premium payments of at least $100.00 each may be made before the Maturity Date. The Company reserves the right to limit the amount or number of any such unscheduled premium payments.

**Grace Period.** If the surrender value on any Monthly Anniversary Day is less than the required monthly deduction, a grace period of 61 days will be granted to pay a premium sufficient to cover the required monthly deduction. (The surrender value and monthly deduction are described under "Nonforfeiture Provisions".) If, however, the Minimum Initial Premium requirement for the amounts and frequency as set forth in the Policy Specifications is met, the policy will not lapse during the Minimum Initial Premium period. The Minimum Initial Premium period is the period during which the Minimum Initial Premium is payable as set forth in the Policy Specifications.

At least 31 days before the end of the grace period the Company will send a notice that there is insufficient cash value under the policy. The notice will show the amount of premium required to cover the monthly deduction to prevent the policy from lapsing and will be mailed to the last known addresses of the Owner and the assignee of record with the Company, if any. If such premium, as billed by the Company, is not paid within the grace period, all coverage under the policy will terminate without value at the end of the grace period. If the insured dies during the grace period, the Company will deduct any overdue monthly deductions from the benefits.

**Reinstatement.** After the policy has lapsed due to the expiration of a grace period, it may be reinstated at any time prior to the Maturity Date provided: (a) it has not been surrendered for cash, (b) a written application for reinstatement is submitted to the Company, (c) evidence of insurability satisfactory to the Company is furnished, (d) enough premium is paid to keep the policy in force for at least 2 months, and (e) any indebtedness against the policy increased by any loan interest is paid or reinstated.

The effective date of the reinstated policy will be the Monthly Anniversary Day that coincides with or next follows the date the application for reinstatement is approved by the Company. The charges shown in the "Table of Surrender Charges" under this policy will be reinstated as of the policy year in which the policy lapsed.

# Ownership, Assignment and Beneficiary Provisions

**Owner.** The Owner on the Date of Issue will be the person designated in the Policy Specifications. If no Owner is designated, the insured will be the Owner.

**Rights of Owner.** While the insured is alive, the Owner may exercise all rights and privileges under the policy including the right to: (a) release or surrender the policy to the Company, (b) agree with the Company to any change in or amendment to the policy, (c) transfer all rights and privileges to another person, and (d) assign the policy.

All rights and privileges of Owner may be exercised without the consent of any designated transferee, or any Beneficiary if the Owner has reserved the right to change the Beneficiary. All such

# Ownership, Assignment and Beneficiary Provisions (Continued)

rights and privileges, however, may be exercised only with the consent of any assignee recorded with the Company and the Beneficiary if the Owner has not reserved the right to change the Beneficiary.

Unless provided otherwise, if the Owner is a person other than the Insured and dies before the Insured, all the rights and privileges of Owner will vest in the Owner's executors, administrators or assigns.

**Transfer of Owner.** The Owner may transfer all rights and privileges of Owner. On the effective date of transfer, the transferee will become the Owner and will have all the rights and privileges of Owner. The Owner may revoke any transfer prior to its effective date.

Unless provided otherwise, a transfer will not affect the interest of any Beneficiary designated prior to the effective date of the transfer.

A transfer of Owner, or a revocation of transfer, must be in writing on a form satisfactory to the Company and filed at the Home Office. A transfer, or a revocation, will not take effect until recorded in writing by the Company. When a transfer or revocation has been so recorded, it will take effect as of the effective date specified by the Owner. Any payment made or any action taken or allowed will take effect as of ... the Company before the transfer, or the revocation, is recorded will be without prejudice to the Company.

**Assignment.** The Company will not be affected by any assignment of the policy until the original assignment or a certified copy of the assignment is filed at the Home Office.

# Insurance Coverage Provisions

**Effective Date of Coverage.** The effective date of this policy will be the Date of Issue provided the initial premium has been paid while the Insured is alive and prior to any change in health from that shown in the original application. This provision will not, however, affect the terms of any Temporary Insurance Agreement.

For any increase or addition to coverage, the effective date will be the Monthly Anniversary Day that coincides with or next follows the date the supplemental application is approved by the Company

**Beneficiary.** The Beneficiary on the Date of Issue will be the person designated in the Policy Specifications.

Unless provided otherwise, the interest of any Beneficiary, who dies before the Insured will vest in the Owner or the Owner's executors, administrators or assigns.

**Change of Beneficiary.** A new Beneficiary may be designated from time to time. A request for change of Beneficiary must be in writing on a form satisfactory to the Company and filed at the Home Office. The request must also be signed by the Owner. The request must also be signed by the Beneficiary if the right to change the Beneficiary has not been reserved to the Owner.

A change of Beneficiary will not take effect until recorded in writing by the Company. When a change of Beneficiary has been so recorded, whether or not the Insured is then alive, it will take effect as of the date the request was signed. Any payment made or any action taken or allowed by the Company before the change of Beneficiary is recorded will be without prejudice to the Company.

Unless provided otherwise, the right to change any Beneficiary is reserved to the Owner.

The Company does not assume responsibility for the validity or sufficiency of any assignment. An assignment of the policy will operate so long as the assignment remains in force.

To the extent provided under the terms of the assignment, an assignment will transfer the interest of any designated transferee or of any Beneficiary if the Owner has reserved the right to change the Beneficiary.

provided (a) sufficient cash value exists under the policy to cover the cost for the increase or (b) sufficient premium for the increase or addition has been paid.

For any insurance that has been reinstated, the effective date will be the Monthly Anniversary Day that coincides with or next follows the day the application for reinstatement is approved by the Company.

## Insurance Coverage Provisions (Continued)

**Termination of Coverage.** All coverage under this policy will automatically terminate upon whichever of the following occurs first:

1. The Owner surrenders the policy.
2. The Insured dies.
3. The policy matures.
4. The grace period ends.

Any monthly deduction made after termination of coverage will not, by itself, be considered a reinstatement of the policy nor a waiver by the Company of the termination. Any such deduction will be refunded.

**Maturity Date.** As used in this policy, the term "Maturity Date" shall mean (a) the last date to which premiums can be paid, or (b) the date on which insurance coverage will cease, or (c) the date on which any remaining net cash value will be paid to the Owner if the Insured is then living.

**Death Benefit.** If the Insured dies while the policy is in force, the Company will pay a death benefit based upon the Specified Amount Option in effect on the date of death, less (a) any indebtedness against the policy and (b) the amount of any partial surrenders. The Specified Amount Options available under this policy are as follows:

SPECIFIED AMOUNT OPTION A — The Insured's Specified Amount is in addition to the cash value. The Insured's death benefit (before deduction of any indebtedness against the policy and the amount of any partial surrenders) will equal the greater of:

(a) the Specified Amount on the date of death plus the cash value on the date of death, or

(b) an amount determined by the Company equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy. Any amount so determined will be set forth in the annual report which the Company will send to the Owner.

SPECIFIED AMOUNT OPTION B — The Insured's Specified Amount includes the cash value. The Insured's death benefit (before deduction of any indebtedness against the policy and the amount of any partial surrenders) will equal the greater of:

(a) the Specified Amount on the date of death, or

(b) an amount determined by the Company equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy. Any amount so determined will be set forth in the annual report which the Company will send to the Owner.

Unless the application for the policy indicates otherwise, or a change in the death benefit option is effected as provided below, the Company will consider Specified Amount Option B to be the option in effect.

**Changes in Amount of Death Benefit.** Unless provided otherwise, a change in death benefit may be effected under this policy, subject to (a) the consent of the Company and (b) the following conditions:

1. All such changes must be requested in writing on a form satisfactory to the Company and filed at the Home Office.

2. If a decrease in the Insured's Specified Amount is requested, the decrease will become effective on the Monthly Anniversary Day that coincides with or next follows receipt of the request provided any requirements as determined by the Company are met.

   In such event, the Company will reduce the existing Specified Amount against the most recent increase first, then against the next most recent increases successively, and finally, against insurance provided under the original application; however, the Company reserves the right to limit the amount of any decrease so that the Specified Amount will not be less than the Minimum Specified Amount shown in the Policy Specifications.

3. If an increase in the Insured's Specified Amount is requested:

   (a) a supplemental application must be submitted and evidence of insurability satisfactory to the Company must be furnished; and

   (b) any other requirements as determined by the Company must be met.

   If the Company approves the request, the increase will become effective upon (i) the Monthly Anniversary Day that coincides

# Insurance Coverage Provisions (Continued)

with or next follows the date the request is approved by the Company and (ii) the deduction from the cash value of the first month's cost of insurance for the increase. An increase in amount will result in additional surrender charges and a new Table of Surrender Charges will be provided when such in- crease takes effect.

4. If a request is made to change the death benefit from Specified Amount Option A to Specified Amount Option B:

   (a) the Specified Amount will be increased to equal the death benefit as of the effective date of change; and

   (b) the effective date will be the Monthly Anniversary Day that coincides with or next follows the date of receipt of the request for change.

5. If a request is made to change the death benefit from Specified Amount Option B to Specified Amount Option A:

   (a) the Specified Amount will be reduced to equal the death benefit, less the cash value, as of the effective date of change; and

   (b) the effective date will be the Monthly Anniversary Day that coincides with or next follows the date of receipt of the request for change.

**Projection of Benefits and Values.** The Company will provide a projection of illustrative future death benefits and cash values at any time upon written request and payment of a reasonable ser- vice fee. The fee payable will be the one then in effect for this service. The illustration will be based on (a) assumptions as to Specified Amount(s), type of coverage option(s) and future planned annual premium payments, and (b) such other as- sumptions (e.g., mortality and interest) as are necessary and speci- fied.

**Cash Value.** On each Monthly Anniversary Day, the cash value will be calculated as (1), plus (2), plus (3), minus (4), where:

(1) is the cash value on the preceding Monthly Anniversary Day.

(2) is all premiums received since the preceding Monthly An- niversary Day less the percentage of premium expense charge from the "Table of Expense Charges".

(3) is interest on items (1) and (2).

(4) is the monthly deduction for the month following the Monthly Anniversary Day.

If premium is received at any time other than the beginning of a policy month, the rate of interest used in the calculation of item (3) above will be determined pro rata from the date of receipt.

On any day other than a Monthly Anniversary Day, the cash value will be the cash value as of the preceding Monthly Anniversary Day, plus all premiums received since the preceding Monthly An- niversary Day, less the percentage of premium expense charge from the "Table of Expense Charges". The cash value on the Date of Issue will be the initial premium received less (i) the initial poli- cy fee from the "Table of Expense Charges", (ii) the monthly de- duction for the then current policy month and; (iii) the percentage of premium expense charge from the "Table of Expense Charges".

# Nonforfeiture Provisions

**Net Cash Value.** The net cash value as of any date shall equal the cash value on that date as determined above less any in- debtedness against the policy.

**Monthly Deduction.** The monthly deduction for a policy month will be calculated as Charge (1) plus Charge (2) where:

CHARGE (1) is the cost of insurance (as described in the "Cost of Insurance" provision) and the cost of any ad- ditional benefits provided by rider for the policy month.

CHARGE (2) is the monthly expense charge from the "Table of Expense Charges".

**Interest Rates.** The Company will credit interest to the cash value of the policy on each Monthly Anniversary Day.

The interest rate applied to the net cash value of the policy will be the greater of:

# Nonforfeiture Provisions (Continued)

(a) .32737% per month, compounded monthly (4% compounded yearly), or

(b) a rate determined by the Company from time to time. Such rate will be established on a prospective basis and may vary by the issue year and duration.

The monthly interest rate applied to that portion of the cash value which secures any outstanding policy loan when expressed as an equivalent annual rate shall be the greater of (a) 4% or (b) the policy loan rate (as described in the "Loan Interest" section) less a percentage no greater than 2%.

(1) is the cost of insurance rate as described in the "Cost of Insurance Rates" provision.

**Cost of Insurance.** The cost of insurance for the insured is determined on a monthly basis. Such cost is calculated as (1), multiplied by the result of (2) minus (3), where:

(2) is the death benefit at the beginning of the policy month, divided by 1.0032737, and

(3) is the cash value at the beginning of the policy month prior to the deduction for the monthly cost of insurance.

**Cost of Insurance Rates.** Monthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience. Any change in cost of insurance rates will apply to all individuals of the same class as the insured. Under no circumstances will the cost of insurance rates ever be greater than those shown in the "Table of Guaranteed Maximum Life Insurance Rates". Such guaranteed maximum rates are based on the Commissioners 1980 Standard Ordinary Mortality Table (B) (age nearest birthday) modified by any flat extra or risk factors for the applicable premium class.

**Insufficient Value.** If the surrender value, on the day preceding a Monthly Anniversary Day is insufficient to cover the monthly deduction for the month following such Monthly Anniversary Day, the policy will terminate as provided in the "Grace Period" provision.

**Basis of Computations.** The minimum cash values under this policy are guaranteed to be no less than those calculated based on the Commissioners 1980 Standard Ordinary Mortality Table (B)

(age nearest birthday) with interest at 4% per year, compounded yearly.

The cash values are at least equal to those required on the Date of Issue by the jurisdiction in which this policy is delivered. A detailed statement of the method of computing values has been filed with the insurance supervisory official of that jurisdiction.

**Continuation of Insurance.** In the event planned annual premium payments are not continued, insurance coverage under this policy and any benefits provided by rider will be continued until the surrender value is insufficient to cover the monthly deduction, as provided in the "Grace Period" provision. This provision will not continue the policy beyond the Maturity Date nor continue any rider beyond the date for its termination, as provided in the rider. At the Maturity Date, the Company will pay the net cash value to the Owner if the insured is then living.

**Surrender and Surrender Value.** This policy may be surrendered on any Monthly Anniversary Day during the lifetime of the insured and before the Maturity Date. The amount payable on surrender of this policy (i.e., the "surrender value") will be the net cash value on the date of surrender less a charge determined from the "Table of Surrender Charges". (The charges shown in the table are the charges imposed at the beginning of the policy year; charges imposed upon surrender during the policy year will be determined on a consistent basis allowing for the lapse of time within such year.)

This surrender value will be paid in cash or under an elected optional mode of settlement. The Company may defer the payment of the surrender value for the period permitted by law, but not for more than 6 months from the date of request for surrender.

If surrender is requested under this section within 30 days after a policy anniversary, the surrender value will not be less than the surrender value on that anniversary, less any policy loans or partial surrenders made on or after such anniversary.

**Partial Surrender.** A partial surrender of this policy may be elected on any Monthly Anniversary Day during the lifetime of the insured and prior to the Maturity Date by submitting written request to the Company. The amount of the partial surrender (a) must be at least $500.00 but (b) may not exceed 90% of the then current surrender value.

# Nonforfeiture Provisions (Continued)

When a partial surrender is made, the amount of the partial surrender will be deducted from the cash value. Also, the death benefit will be reduced by the amount of the partial surrender. The Specified Amount remaining in force after any partial surrender will be subject to the limits and minimum amount described in the "Changes in Amount of Death Benefit" provision.

The Company will not allow a partial surrender if the surrender value would be reduced below that required under the laws of the jurisdiction in which this policy is delivered.

A fee as set forth in the "Table of Expense Charges" will be deducted for each partial surrender. The Company reserves the right to limit the number of partial surrenders in a policy year. The Company also reserves the right to defer payment for the period permitted by law, but not for more than 6 months from the date of request for the partial surrender, unless such partial surrender amount is to be applied to the payment of premiums on policies with the Company.

# Loan Provisions

**Policy Loans.** After a cash surrender value is available, the Company will grant a loan against the policy provided: (a) a proper loan agreement is executed and (b) a satisfactory assignment of the policy to the Company is made. The total amount of all loans with interest may not exceed the surrender value of the policy.

The Company may defer a loan for 6 months from the date of the request for the loan. The Company will not, however, defer a loan to be used to pay premiums on policies with the Company.

**Loan Interest.** Interest on any policy loan will be at a rate no greater than 8% per year payable in arrears. Loan interest is payable annually on each policy anniversary or as otherwise agreed in writing by the Owner and the Company. Interest not paid when due will then be added to the loan and bear interest at the same

rate. Interest, as it accrues from day to day, will constitute an indebtedness.

**Indebtedness.** The term "indebtedness" means money which is owed on this policy because of a loan on this policy. Any indebtedness at time of settlement will reduce the proceeds. Indebtedness may be repaid in whole or in part at any time before the policy matures. If, however, a premium is not paid within the grace period, any outstanding indebtedness can be repaid only if the policy is reinstated.

If at any time the total indebtedness against the policy, including interest accrued but not due, equals or exceeds the then current cash value, the policy will thereupon terminate without value subject to the conditions in the "Grace Period" provision.

# General Provisions

Only the President, a Vice President, a Secretary, a Director or an Assistant Director of the Company may make or modify this policy.

The policy is executed at the Home Office of the Company, the Post Office address of which is Hartford, Connecticut.

**Non-Participation.** The policy is not entitled to share in surplus distribution.

**The Policy.** The policy and the application for the policy (including any supplemental applications for additional Specified Amounts) constitute the entire contract between the parties. All statements made in the application will, in the absence of fraud, be deemed representations and not warranties. No statement will be used in defense of a claim under the policy unless it is contained in the application, and a copy of the application is attached to the policy when issued.

# General Provisions (Continued)

**Payment of Proceeds.** Proceeds, as used in this policy, means the amount payable (a) on the Maturity Date, (b) upon the surrender of this policy before the Maturity Date, or (c) upon the death of the Insured.

The proceeds payable upon receipt of due proof of the Insured's death will be the Insured's death benefit less (a) any indebtedness against the policy and (b) the amount of any partial surrenders. If the policy is surrendered before the Maturity Date, the proceeds will be the surrender value described in the "Nonforfeiture Provisions" section. On the Maturity Date, the proceeds will be the net cash value. The proceeds are subject to the adjustments described in the following provisions:

1. Misstatement of Age;

2. Incontestability;

3. Suicide;

4. Partial Surrender;

5. Grace Period; and

6. Indebtedness.

When settlement is made, the Company may require return of the policy.

**Misstatement of Age.** If the age of the Insured is misstated, the Company will adjust the death benefit to the amount that would have been purchased for the correct age at the then current cost of insurance rates. No adjustment, however, will be made to the cash value of the policy.

**Suicide.** If the Insured commits suicide, while sane or insane, within 2 years from the Date of Issue, the death benefit will be limited to a refund of premiums paid, less (a) any indebtedness against the policy, and (b) the amount of any partial surrenders. If the Insured commits suicide, while sane or insane, within 2 years from the effective date of any increase in the Specified Amount, the death benefit payment with respect to such increase will be limited to a refund of the monthly charges for the cost of such insurance.

**Incontestability.** Except for nonpayment of monthly deductions, this policy will be incontestable after it has been in force during the Insured's lifetime for 2 years from its Date of Issue. This means that the Company will not use any misstatement in the application to challenge a claim or avoid liability after that time. Any increase in the Specified Amount effective after the Date of Issue will be incontestable only after such increase has been in force for 2 years during the Insured's lifetime.

The basis for contesting an increase in Specified Amount will be limited to material misrepresentations made in the supplemental application for the increase. The basis for contesting after reinstatement will be (a) limited for a period of 2 years from the date of reinstatement and (b) limited to material misrepresentations made in the reinstatement application.

**Annual Report.** The Company will send a report to the Owner at least once a year without charge for such a report. The report will show (a) the current death benefit, (b) the current net cash value, (c) premiums paid and all deductions made since the last report, and (d) outstanding policy loans.

**Change of Plan.** This policy may be exchanged for another policy only if the Company consents to the exchange and all requirements for the exchange as determined by the Company are met.

# Optional Methods of Settlement

This rider is made part of the policy to which it is attached as of the Date of Issue.

Upon written request, the Company will agree to pay in accordance with any one of the options shown below all or part of the net proceeds that may be payable under the policy. If (a) the proceeds to be settled under any option are less than $2,500, or (c) any instalment or interest payment is less than $25, or (c) any payee is a corporation, partnership, association, trustee or assignee, such options will be available only with the Company's consent.

While the insured is alive, the request may be made by the Owner. Unless otherwise specified in writing by the Owner, such a request may also be made by the Beneficiary, after the insured's death, provided it is made prior to any payment.

**Option A: Annuity Certain.** A definite number of equal instalments or their equivalent will be payable. The first payment will be payable on the date proceeds are settled under the option. The amount of each instalment will be determined from the Option A Table. The Option A Table is based on a guaranteed interest rate of 3%, per year compounded annually.

**Option B: Life Annuity with Certain Period.** A definite number of equal monthly instalments or their equivalent, and as long thereafter as the payee lives, will be payable. The first payment will be payable on the date proceeds are settled under the option. The amount of each instalment will be determined from the Option B Table based on the payee's sex and settlement age. The settlement age shown in the Option B Table will be the payee's age, nearest birthday, on the date the first amount is paid modified as follows:

| Calendar Year in which the first instalment is payable | Settlement Age of Payee is age nearest birthday plus |
|---|---|
| Before 1990 | 3 |
| 1990 - 1999 | 2 |
| 2000 - 2009 | 1 |
| 2010 and later | 0 |

The Option B Table is based on a guaranteed interest rate of 3.5% per year compounded annually.

**Option C: As a Deposit at Interest.** The Company will retain the proceeds while the payee is alive and will pay interest annually thereon at a rate of not less than 3 % per year. Upon the payee's death, the amount on deposit will be paid.

**Option D: Instalments Until Proceeds are Exhausted.** Instalments of specified amounts will be payable until the proceeds with any interest thereon are exhausted. The first instalment will be payable on the date proceeds are settled under the option. The instalment amounts must be at least $120 per year per $1,000 of proceeds retained. Interest will be payable at a rate of not less than 3 % per year compounded annually.

**Additional Options.** Any proceeds payable under the policy may also be settled under any other method of settlement offered by the Company at the time of the request.

**Excess Interest.** At the sole discretion of the Company, excess interest may be paid or credited from time to time in addition to the payments guaranteed under any Optional Method of Settlement.

**Connecticut General Life Insurance Company**

*R. J. Sebe*
President

# Optional Methods of Settlement (Continued)

## Option A Table For Each $1,000 Retained

| Number of years during which installments will be paid | Amount of each installment — Annual | Amount of each installment — Monthly |
|---|---|---|
| 1 | $1,000.00 | $84.47 |
| 2 | 507.39 | 42.86 |
| 3 | 343.23 | 28.99 |
| 4 | 261.19 | 22.06 |
| 5 | 211.99 | 17.91 |
| 6 | 179.22 | 15.14 |
| 7 | 155.83 | 13.16 |
| 8 | 138.31 | 11.68 |
| 9 | 124.69 | 10.53 |
| 10 | 113.82 | 9.61 |
| 11 | 104.93 | 8.86 |
| 12 | 97.54 | 8.24 |
| 13 | 91.30 | 7.71 |
| 14 | 85.95 | 7.26 |
| 15 | 81.33 | 6.87 |
| 16 | 77.29 | 6.53 |
| 17 | 73.74 | 6.23 |
| 18 | 70.59 | 5.96 |
| 19 | 67.78 | 5.73 |
| 20 | 65.26 | 5.51 |
| 25 | 55.76 | 4.71 |
| 30 | 49.53 | 4.18 |

## Option B Table For Each $1,000 Retained

*Settlement age of payee nearest birthday; Number of installments certain. (\* and under, \*\* and over)*

| Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|
| 15 | 10* | $3.16 | $3.16 | $3.16 | $3.15 |
| 16 | 11 | 3.17 | 3.17 | 3.17 | 3.16 |
| 17 | 12 | 3.18 | 3.18 | 3.18 | 3.17 |
| 18 | 13 | 3.19 | 3.19 | 3.18 | 3.17 |
| 19 | 14 | 3.20 | 3.20 | 3.20 | 3.20 |
| 20 | 15 | 3.21 | 3.21 | 3.21 | 3.21 |
| 21 | 16 | 3.23 | 3.22 | 3.22 | 3.22 |
| 22 | 17 | 3.24 | 3.24 | 3.24 | 3.23 |
| 23 | 18 | 3.25 | 3.25 | 3.25 | 3.25 |
| 24 | 19 | 3.27 | 3.27 | 3.26 | 3.26 |
| 25 | 20 | 3.28 | 3.28 | 3.28 | 3.27 |
| 26 | 21 | 3.30 | 3.30 | 3.29 | 3.29 |
| 27 | 22 | 3.31 | 3.31 | 3.31 | 3.31 |
| 28 | 23 | 3.33 | 3.33 | 3.33 | 3.32 |
| 29 | 24 | 3.35 | 3.35 | 3.34 | 3.34 |
| 30 | 25 | 3.37 | 3.37 | 3.36 | 3.36 |
| 31 | 26 | 3.39 | 3.38 | 3.38 | 3.38 |
| 32 | 27 | 3.41 | 3.40 | 3.40 | 3.40 |
| 33 | 28 | 3.43 | 3.43 | 3.42 | 3.42 |
| 34 | 29 | 3.45 | 3.45 | 3.44 | 3.44 |
| 35 | 30 | 3.47 | 3.47 | 3.47 | 3.46 |
| 36 | 31 | 3.50 | 3.49 | 3.49 | 3.48 |
| 37 | 32 | 3.52 | 3.52 | 3.51 | 3.51 |
| 38 | 33 | 3.55 | 3.54 | 3.54 | 3.53 |
| 39 | 34 | 3.58 | 3.57 | 3.57 | 3.56 |
| 40 | 35 | 3.60 | 3.60 | 3.59 | 3.58 |
| 41 | 36 | 3.64 | 3.63 | 3.62 | 3.61 |

| Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|
| 42 | 37 | $3.67 | $3.66 | $3.65 | $3.64 |
| 43 | 38 | 3.70 | 3.70 | 3.69 | 3.67 |
| 44 | 39 | 3.74 | 3.73 | 3.72 | 3.70 |
| 45 | 40 | 3.77 | 3.77 | 3.75 | 3.74 |
| 46 | 41 | 3.81 | 3.80 | 3.79 | 3.77 |
| 47 | 42 | 3.85 | 3.84 | 3.83 | 3.81 |
| 48 | 43 | 3.89 | 3.88 | 3.87 | 3.84 |
| 49 | 44 | 3.94 | 3.93 | 3.91 | 3.88 |
| 50 | 45 | 3.99 | 3.97 | 3.95 | 3.92 |
| 51 | 46 | 4.03 | 4.02 | 4.00 | 3.96 |
| 52 | 47 | 4.09 | 4.07 | 4.05 | 4.00 |
| 53 | 48 | 4.14 | 4.13 | 4.09 | 4.05 |
| 54 | 49 | 4.20 | 4.18 | 4.14 | 4.09 |
| 55 | 50 | 4.26 | 4.24 | 4.20 | 4.14 |
| 56 | 51 | 4.32 | 4.30 | 4.25 | 4.19 |
| 57 | 52 | 4.39 | 4.36 | 4.31 | 4.23 |
| 58 | 53 | 4.46 | 4.43 | 4.37 | 4.28 |
| 59 | 54 | 4.53 | 4.49 | 4.43 | 4.34 |
| 60 | 55 | 4.61 | 4.56 | 4.49 | 4.39 |
| 61 | 56 | 4.69 | 4.64 | 4.55 | 4.44 |
| 62 | 57 | 4.77 | 4.71 | 4.62 | 4.50 |
| 63 | 58 | 4.85 | 4.79 | 4.69 | 4.55 |
| 64 | 59 | 4.94 | 4.87 | 4.76 | 4.61 |
| 65 | 60 | 5.04 | 4.96 | 4.84 | 4.67 |
| 66 | 61 | 5.14 | 5.05 | 4.91 | 4.73 |
| 67 | 62 | 5.24 | 5.14 | 4.99 | 4.79 |
| 68 | 63 | 5.35 | 5.24 | 5.07 | 4.85 |

| Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|
| 69 | 64 | $5.47 | $5.34 | $5.15 | $4.91 |
| 70 | 65 | 5.59 | 5.45 | 5.24 | 4.97 |
| 71 | 66 | 5.71 | 5.56 | 5.33 | 5.03 |
| 72 | 67 | 5.85 | 5.66 | 5.43 | 5.08 |
| 73 | 68 | 5.99 | 5.80 | 5.51 | 5.16 |
| 74 | 69 | 6.15 | 5.93 | 5.61 | 5.21 |
| 75 | 70 | 6.31 | 6.07 | 5.70 | 5.27 |
| 76 | 71 | 6.48 | 6.21 | 5.80 | 5.33 |
| 77 | 72 | 6.66 | 6.35 | 5.90 | 5.38 |
| 78 | 73 | 6.86 | 6.50 | 6.00 | 5.43 |
| 79 | 74 | 7.07 | 6.66 | 6.10 | 5.48 |
| 80 | 75 | 7.29 | 6.83 | 6.19 | 5.52 |
| 81 | 76 | 7.52 | 7.00 | 6.29 | 5.56 |
| 82 | 77 | 7.77 | 7.17 | 6.38 | 5.60 |
| 83 | 78 | 8.04 | 7.35 | 6.47 | 5.63 |
| 84 | 79 | 8.32 | 7.53 | 6.55 | 5.66 |
| 85** | 80 | 8.62 | 7.71 | 6.63 | 5.68 |
| | 81 | 8.94 | 7.89 | 6.71 | 5.70 |
| | 82 | 9.28 | 8.07 | 6.78 | 5.72 |
| | 83 | 9.63 | 8.25 | 6.84 | 5.73 |
| 84 | 84 | 10.00 | 8.43 | 6.89 | 5.74 |
| 85** | 85** | 10.39 | 8.60 | 6.94 | 5.74 |
| | | 10.80 | 8.77 | 6.98 | 5.75 |
| | | 11.22 | 8.93 | 7.01 | 5.75 |
| | | 11.66 | 9.08 | 7.04 | 5.75 |
| | | 12.12 | 9.21 | 7.06 | 5.75 |
| | | 12.60 | 9.34 | 7.07 | 5.75 |

\* and under   \*\* and over

# CONNECTICUT GENERAL LIFE INSURANCE COMPANY

HARTFORD, CONNECTICUT

Insured:   **ANTHONY J GROSEK, JR**

Policy Number:   **5056025**

Date of this Rider:   **NOVEMBER 7, 1988**

In accordance with the "Change of Plan Provisions" of prior Policy Number**1927896**

The period during which this policy is contestable, as provided for in the provision of the policy entitled "Incontestability", and the period during which the suicide of the Insured is a risk not assumed, as provided for in the provision of the policy entitled "Suicide", will, with respect to the amount of insurance of the prior policy, begin from the date of issue of the prior policy. Such provisions, however, will begin from the Date of Issue of this new policy with respect to any amount of insurance in excess of the amount of insurance of the prior policy.

President

B8577

Connecticut General Life Insurance Company
a CIGNA company

# LIFE INSURANCE APPLICATION — SIMPLIFIED
№ 003607    PART I

**1a.** Full First Name: *Anthony*  Middle Initial: *J*  Last Name: *Grosek Jr*
**b.** Proposed Insured's SS #: 7 6 7 - 7 6 - 7 6 6 7
**c.** Sex: ☒ M  ☐ F

**d.** Date of Birth: Month *5* Day *19* Year *26*  Age nearest Birthday *62*  Place of Birth: *Wilkes Barre Pa* State

**2.** Residence: Street and No. *RD #2 Box 2*  City *Pioneer Ave*  State *Dallas Pa*  Zip Code *18612*  Phone Numbers (Home) (Work) *717-826-6822*

**3a.** Plan of Insurance: *(Flex. Prem. Adjustable Life) Continuum/PAT*
**b.** ELECTED RATE: ☐ Sex Neutral  ☒ Sex Distinct (check one)

**c.** ☐ Option (A) Specified Amount Plus Cash Value
☒ Option (B) Specified Amount
Initial Specified Amount $ *1,600,000*
1st Year Planned Annual Premium $ *68,631*
☐ Lump Sum Deposit $

**4.** Shall the Automatic Premium Loan provision (if available) be made effective? ☐ Yes ☐ No

**5.** Additional Benefits (if available.) Check benefit(s) desired and indicate amount where requested.
☐ Waiver of Premium (WP)/Monthly Deduction (WMD)
☐ Additional Indemnity (AI) $ ____ (if less than face)
☐ Insured Purchase Option (IPO) $ ____
☐ ____ $ ____
☐ Target Term Rider (TTR) ____ % $ ____
☐ Flex Premium Increasing Term Rider (FPIT) $ ____
☐ ____ $ ____

**6a.** Occupation: *President*  How long so employed? *15 Years*
**b.** Name of employer and nature of business: *Management Alliance Inc*
**c.** Is employer the Owner of this Policy? ☐ Yes ☒ No
**d.** Place of Business: Street and No. *Suite 1500 Hanover Center Bldg 10 W Northampton St* City *Wilkes Barre* State *Pa* Zip Code *18763*

**7a.** Owner AND relationship to proposed Insured if other than #6b. (If no other Owner is designated, the Insured shall be Owner.)
*George B Jordan, Trustee under an Agreement of Trust with the Insured dated March 31, 1980*
**b.** Contingent Owner, if any, AND relationship to Proposed Insured.

**c.** If Owner is other than the Insured, Owner's SS # ☐☐☐-☐☐-☐☐☐☐ or Tax I.D. # 2 3 - 6 7 6 6 2 9 7 6

**8a.** How shall premiums be payable? ☒ Annually ☐ Semi-Annually ☐ Quarterly ☐ PAC ☐ Salary Allotment ☐ Govt. Allotment
**b.** To whom shall premium notices be sent? ☐ To both Insured and Owner ☒ To Owner only ☐ To Insured only (Owner must sign Application)
**c.** If Insured to receive premium notices, where should they be sent? ☐ Insured's residence ☐ Insured's business ☐ Other
**d.** If Owner is to receive premium notices, where should they be sent? *PO Box 276* Street and No. City *Trucksville* State *Pa* Zip Code *18618*

**9.** Beneficiary. All Primary Beneficiaries who survive the Insured shall share equally unless otherwise indicated. If no Primary Beneficiary survives the Insured, benefits will be paid in equal shares to the Contingent Beneficiaries, if surviving the Insured, unless otherwise specified.

**a.** Primary Beneficiary AND relationship to Proposed Insured. *George B Jordan, Trustee under an Agreement of Trust with the Insured Dated March 31, 1980*
**b.** Contingent Beneficiary AND relationship to Proposed Insured.

**c.** Is the right to change the Beneficiary and to exercise all other policy rights without the consent of the Beneficiary reserved to the Owner? ☒ Yes ☐ No

**10.** If Beneficiary or Owner is other than an individual, indicate whether a ☐ Corporation or ☐ Partnership

| 11. Will you discontinue or otherwise stop paying premiums on any Life Insurance or Annuity if this Insurance is issued? If "Yes," give full details in space provided. ☒ Yes ☐ No Forward proper replacement forms, if required. | Company | Policy Number | Amount |
|---|---|---|---|
| | *Conn Gn* | *1527896* | *600,000* |
| | *Banner Life* | *1164 70148* | *500,000* |

B9642 (Page 1)    Cat. #369256

| | |
|---|---|
| 12. Do you contemplate flying, or have you flown during the past 2 years as a pilot, student pilot, or crew member? *If "Yes" an Aviation Supplement is required.* ☐ Yes ☐ No | DETAILS OF "YES" ANSWERS TO QUESTIONS 14-20. Identify question Number. |
| 13. Do you plan to participate or have you participated within the past 2 years in any hazardous sports or activities such as motor vehicle or boat racing, hang gliding, or sky, skin, or scuba diving? *If "Yes," complete Avocation questionnaire.* ☐ Yes ☐ No | |
| 14. Do you contemplate residence or travel outside of the United States or Canada for more than 30 days within the next year? ☐ Yes ☐ No *If "Yes," give full details in space provided at right.* | **Response to** |
| 15. Have you ever applied for any Life or Health Insurance which resulted in your being turned down, asked to pay extra premium, or issued a reduced face amount? ☐ Yes ☐ No *If "Yes," give full details in space provided at right.* | **questions 11 thru 21** |
| 16. What is your exact height?      ft.      in. | **not requested for** |
| 17. What is your exact weight?      lbs. | **Precedent Asset** |
| 18. Have you ever had or consulted a physician for: any disease of the heart, blood vessels, or lungs; tumor or cancer; elevated blood pressure; nervous system disorder; mental, emotional or behavorial disorder; diabetes, kidney or urinary disorder; disease of the stomach, intestines, or liver; treatment for alcoholism or drug abuse; or major accident? ☐ Yes ☐ No *If "Yes," give full details in space provided at right.* | **Transfer Program** |
| 19. During the last six months, have you been absent from work (or school) because of illness or injury? ☐ Yes ☐ No *If "Yes," give full details in space provided at right.* | |
| 20. When and for what reason did you last consult a physician? *Give full details in space provided at right. Include physician's name.* | |
| 21. Have you smoked one or more cigarettes in the past 12 months? ☐ Yes ☐ No | |

| 22. ADDITIONAL INSTRUCTIONS | 23. HOME OFFICE CHANGES OR CORRECTIONS |
|---|---|
| Precedent Policy 1927896 shall be transferred. Date policy 11-7-88    Client # 0000505 | |

I (We) have read the above questions and answers and declare that they are complete and true to the best of my (our) knowledge and belief. I (We) agree, a) that this Application (Part I, pages 1 and 2; Part II if required) shall form a part of any Policy issued, and b) that no Agent/Representative of the Company shall have the authority to waive a complete answer to any question in this Application, transfer insurability, make or alter any contract, or waive any of the Company's other rights or requirements. I (We) further agree that no insurance shall take effect (except as provided in the Temporary Life Insurance Agreement if an advance payment has been made and acknowledged above and such Agreement issued) unless and until the Policy has been delivered to and accepted by me (us) and the initial premium paid during the lifetime and prior to any change in the health of the Proposed Insured.

Changes or corrections made by the Company and noted in Item 23 above are ratified by the Owner upon acceptance of a contract containing this Application with the noted changes or corrections. In those states where written consent is required by statute or State Insurance Department regulation, amendments as to plan, amount, age at issue, classification, or benefits will be made only with the Owner's written consent.

Dated at _____ on _____ 19 ___
            City and State            Month    Day    Year

X _____
Witness - Licensed Agent/Representative

X _____
Signature of Proposed Insured

_____
Witness

X _____
Signature of Applicant/Owner if Other than Proposed Insured (when required)

Nº 003607

B9642 (Page 2)                    Cat. #369256

PART II OF APPLICATION FOR

(Proposed Insured's answers must be recorded by Medical Examiner with no one else present)

| PROPOSED INSURED: | Grosek, Anthony Jr. |
|---|---|

**BIRTHDATE** MO. DAY YR. 5 | 9 | 26

EXAMINER: PLEASE CHECK REASON FOR EXAMINATION: ☒ LIFE INS.  ☐ DISABILITY INS.  ☐ PLAN CHANGE  ☐ OTHER (Explain)

| | | Yes | No |
|---|---|---|---|
| 1. | Have you ever had or been treated for: | | |
| a. | Chest pain, high blood pressure, heart disease, heart murmur, or other disorders of the heart or blood vessels? | ☒ | ☐ |
| b. | Ulcers, colitis, jaundice, or other disease of the stomach, liver, intestines or gallbladder? | ☐ | ☒ |
| c. | Sugar, albumin, blood or pus in the urine; venereal disease; disorder of the kidney or bladder? | ☐ | ☒ |
| d. | Seizures, epilepsy, fainting, dizziness, stroke or paralysis? | ☐ | ☒ |
| e. | Nervous, mental, or emotional disorder? | ☐ | ☒ |
| f. | Any tumor, cancer, cysts; any disorder of lymph glands? | ☐ | ☒ |
| g. | Arthritis, gout, recurrent back pain, sciatica, neuritis, or any disorder of the back, spine, nerves, muscles or joints? | ☐ | ☒ |
| h. | Diabetes, thyroid or other endocrine or glandular disorder? | ☐ | ☒ |
| i. | Anemia, immune deficiency, or any other blood disorder? | ☐ | ☒ |
| j. | Asthma, emphysema, shortness of breath, or any other disorder of the respiratory system? | ☐ | ☒ |
| k. | Disorder of the eyes, ears, nose or throat? | ☐ | ☒ |
| l. | Drug or alcohol abuse, or been advised to limit your use of alcohol or addictive substances? | ☐ | ☒ |
| m. | Any physical abnormality or deformity? | ☐ | ☒ |
| n. | Allergies or skin disease? | ☐ | ☒ |
| 2. | Are you now under observation or treatment? | ☐ | ☒ |
| 3. | Other than above, have you within the past 5 years: | | |
| a. | Had any mental or physical disorder not listed above? | ☐ | ☒ |
| b. | Had a check-up, electrocardiogram, x-ray, blood test or diagnostic test? | ☒ | ☐ |
| c. | Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☒ | ☐ |
| d. | Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ |
| 4. | Have you ever requested or received benefits or payment because of an injury, sickness or disability? | ☐ | ☒ |
| 5. | Have you used tobacco in any form within the last twelve months? If "Yes," describe frequency and kind of tobacco used. | ☐ | ☒ |
| 5. | Family History: Diabetes, cancer, high blood pressure, mental illness, suicide or heart disease? | ☒ | ☐ |

Details of "Yes" answers: Identify question number, circle applicable items. Include diagnosis, dates, duration and names and addresses of all attending physicians and medical facilities.

1. a. History hypertension for past 5-6 yrs. well controlled with medication

3. b. Routine check-ups and blood tests at family physician office

3. c. Hospitalized for adverse reaction to a new blood pressure med in August, 1988.

b. Mother developed diabetes in old age, very mild according to patient.

| | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | | CVA | 76 |
| Mother | | Old age | 94 |
| Brothers & Sisters | 54, 65, 68, 76, 74, 70 | | |
| No. Living | (all living) 6 | | |
| No. Dead | | | |

8. Have you ever had any disorder of the reproductive organs (testicles, prostate, breasts, ovaries, etc.)? ☐ Yes  ☒ No  If yes, explain

7a. Name and address of your personal physician: Dr. Irvin Jacobs, Machell, Dallas, PA  (If none, please check) ☐ None

b. Date and reason last consulted: Oct. 1988 — for routine physical

c. What treatment was given or medication prescribed? NONE

I hereby declare that the statements and answers to the above questions are complete and true to the best of my knowledge and belief. I agree that a copy of this Part II shall be attached to and form a part of any policy issued.

DATED AT (City, State & Zip Code) Kingston PA. 18704

(Month, Day & Year) on: 11-4-88

SIGNATURE OF PROPOSED INSURED OR PARENT OR GUARDIAN IF A JUVENILE

WITNESS (Medical Examiner) David Kaye D.O.

42a

Cat. #335091a

Endorsements

# Connecticut General Life Insurance Company

### Flexible Premium Adjustable Life Insurance Policy - Non-Participating

Death benefit payable in the event of death before the Maturity Date. Adjustable death benefit.

Net Cash Value payable on the Maturity Date.

Flexible Premiums payable to Maturity Date or prior death of the Insured.

Premium Payment Periods and Supplementary Coverages as shown in the Policy Specifications.

# EXHIBIT "B"



THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

**Lincoln**
Financial Group®

**2011 Annual Statement**
*A UNIVERSAL LIFE PRODUCT*
November 7, 2010 to November 6, 2011

ANTHONY J GROSEK JR TDT#03#0
GEORGE B GORDON TTEE
644 MEADOWS NEW BERRY 1ST
DALLAS, PA 18612

### GENERAL INFORMATION ON YOUR CONTINUUM POLICY

| | |
|---|---|
| INSURED NAME | ANTHONY J GROSEK JR |
| DATE OF BIRTH | MAY 9, 1936 |
| AGE AT ISSUE | 62 |
| | FINANCIAL REPRESENTATIVE: |
| | BILL DEFONER |
| POLICY NUMBER | 5656025 |
| ISSUE DATE | NOVEMBER 7, 1988 |
| ANNIVERSARY DATE | NOVEMBER 7, 2011 |
| OWNER NAME | ANTHONY J GROSEK JR TDT#03#0 |
| MATURITY DATE | NOVEMBER 7, 2011 |
| PLANNED PERIODIC PREMIUM | $29,500.00 ANNUALLY |

### POLICY VALUES AND BENEFIT SUMMARY

| | AS OF 11/06/2010 | AS OF 11/06/2011 |
|---|---|---|
| DEATH BENEFIT | $ 1,600,000.00 | $ 1,600,000.00 |
| GROSS FUND VALUE | $ 41,271.03 | $ 9,058.00 |

---

### POLICY PROJECTIONS

### TRANSACTION HISTORY

| | | |
|---|---|---|
| DEATH BENEFIT AS OF 11/06/2010 | $1,600,000.00 | CURRENT GROSS FUND VALUE | $9,058.00 |
| CURRENT SURRENDER VALUE | $1,600,000.00 | CURRENT NET FUND VALUE | $9,058.00 |
| CURRENT NET DEATH BENEFIT | $1,600,000.00 | CURRENT SURRENDER VALUE | $9,058.00 |

| | | |
|---|---|---|
| TOTAL LOAN | $000 | LOAN INTEREST CHARGED AT 8.00% | $000 |

| Effective Month | Payment Received | Expense Charges | Interest Credited | | Interest Rate | Insurance Charges | Partial Withdrawals | Fund Value | Total Death Benefit |
|---|---|---|---|---|---|---|---|---|---|

---

---

**CONTINUUM – UNIVERSAL LIFE**
**CONNECTICUT GENERAL LIFE INSURANCE COMPANY**
Supplement to Accompany Report Prepared November 8, 2011

Policy Number: 5656025     Insured Name: Anthony J Grosek Jr

| Date of Transaction | Type of Transaction | Increase to Fund Value (Amount / %, if applicable) | Decrease to Fund Value |
|---|---|---|---|

*The credited interest rate includes a persistency bonus of 0.250% of the fund value.

---

### GLOSSARY OF KEY TERMS AND ADDITIONAL IMPORTANT INFORMATION

### GENERAL INFORMATION ON YOUR CONTINUUM POLICY

### POLICY VALUES AND BENEFIT SUMMARY

### POLICY PROJECTIONS

### TRANSACTION HISTORY

---

Policy Number: [illegible]                                    Page 8

---

**IMPORTANT POLICY HOLDER INFORMATION**

---

You should consider requesting a reduction in your coverage if you find that it is no longer in your best interest. You should not consider replacement if your policy in not in charge in your coverage when requesting continuation. You may initially request, without charge, an illustration by calling (866) 630-3223, contact your Financial Representative, or arrange for an illustration through Group P.O. Box 80390, Lincoln, NE 68501. If you do not receive a current illustration of your policy with 30 days from your request, you should contact your state insurance department.

US056925

EXHIBIT "C"



**Lincoln**
Financial Group℠

The Lincoln National Life Insurance Company
Client Service Center
P.O. Box 84130
Lincoln, NE 68501-4130

*Notice of Policy Status*



ANTHONY J GROSEK JR TDT033180
GEORGE B SORDON TTES
644 MEADOWS NEWBERRY EST
DALLAS, PA  18612

March 6, 2012
Policy Number:  5056025
Insured:  ANTHONY J GROSEK JR
Issuing Company*:  CONNECTICUT GENERAL
LIFE INSURANCE COMPANY
Financial Representative:  BILL BERGNER

Dear Client:

We are writing to tell you that there is insufficient cash value under your life insurance policy to cover the required monthly deduction.  Because we value you as a customer, we encourage you to continue to provide protection for you and your beneficiary.

The minimum payment necessary to maintain this policy in force until 11/07/2012 is $90,417.79.  Unless this amount is received within the grace period, your policy will terminate, according to its terms, on 04/08/2012.

CURRENTLY YOUR ELECTED PREMIUM DOES NOT COVER YOUR TOTAL COST OF INSURANCE FOR THE ANNUAL MODE.  PLEASE CONTACT OUR OFFICE FOR AN ILLUSTRATION.

We are committed to providing you with quality customer service.  If you have any questions or comments, please contact Lincoln's Client Service Center at (866) 835-3223 between the hours of 8:00 a.m. and 6:00 p.m. Eastern Time, Monday through Friday, or contact your financial representative.

Sincerely,

Lincoln's Client Service Center

* *The Lincoln National Life Insurance Company* acts as administrative agent for this company.

www.lfg.com

*Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.*

4B U5056025CCYRLNL875-4B